UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHANIE SIMPSON
on behalf of Z.J.M,

        Plaintiff,

v.                                              7:10-cv-0760
                                                    (GTS)
COMM'R OF SOC. SEC.,

        Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP     LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
407 Sherman Street
Watertown, NY 13601

SOCIAL SECURITY ADMINISTRATION           TOMASINA DIGRIGOLI, ESQ.
  OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza -- Room 3904
New York, NY 10278

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Plaintiff Stephanie Simpson ("Plaintiff") commenced this action against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g) seeking Supplemental Security Income ("SSI") benefits on behalf of her son, Z.J.M. Currently pending before the Court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 11), and Defendant's motion for judgment on the pleadings (Dkt. No. 13). Generally, in her motion, Plaintiff argues that Z.J.M., who suffers from hypertrophic cardiomyopathy, was disabled from birth, on April 14, 2006, until August 26, 2007, and that a contrary finding by an administrative

law judge ("ALJ") is not supported by substantial evidence in the record and resulted from the ALJ's failure to fully develop the record. Generally, in his motion, Defendant argues that the Commission's decision that Z.J.M. was not disabled during the relevant period was supported by substantial evidence. For the reasons set forth below, Plaintiff's motion is granted, Defendant's motion is denied, and this matter is remanded to the Social Security Administration for further proceedings consistent with this Decision and Order.

I.      RELEVANT BACKGROUND

     A.      Factual Background

Z.J.M. was born on April 14, 2006, after an unremarkable pregnancy. His newborn physical was normal. (*See* Administrative Transcript ["T."] at 142-143.) During a well-child visit on May 17, 2006, pediatrician Dr. Jana Shaw detected a systolic heart murmur and referred Z.J.M. for an echocardiogram and a pediatric cardiology consultation. (T. 151.)

On June 15, 2006, pediatric cardiologist Dr. Frank Smith diagnosed Z.J.M. with familial hypertrophic cardiomyopathy with obstruction after an examination and review of results of an electrocardiogram and echocardiogram. Dr. Smith noted that Z.J.M.'s "ventricular septum is at least moderately hypertrophied and there is subaortic stenosis with a variable subaortic stenosis gradient of 64-100 mmHg." Dr. Smith notified Plaintiff that there is a risk of sudden arrhythmia or sudden death with this diagnosis, although relatively rare in young children. Dr. Smith recommended no restrictions on Z.J.M.'s activity, but started him on four milligrams daily of Propranolol, a beta blocker, due to a dynamic obstruction of his outflow. (T. 177-178.)

On July 6, 2006, Dr. Smith repeated Z.J.M.'s echocardiogram and noted that "his LV outflow tract obstruction was, if anything, a little better." Due to Z.J.M.'s weight gain, his

prescription for Propranolol was increased to six milligrams daily.  Again, Dr. Smith placed no restrictions on Z.J.M.'s activity.  (T. 174-175).  On August 3, 2006, Dr. Smith noted no changes in Z.J.M.'s cardiac exam, but again, due to weigh gain, increased his dosage of Propranolol, and provided Plaintiff with a schedule for further increases based on Z.J.M.'s weight.  Also, Dr. Smith continued to place no restrictions on Z.J.M.'s activity.  (T. 171-172.)

On September 19, 2006, Z.J.M. presented to Dr. Sandra Crane, a pediatrician, with coughing, wheezing and a runny nose.  Dr. Crane diagnosed Z.J.M. with asthma and prescribed Xopenex, a bronchodilator.  (T. 188.)  On September 22, 2006, Dr. Crane saw Z.J.M., who presented with Plaintiff's complaint that his cough was rattling.  Dr. Crane reduced the Xopenex dosage and conferred with Dr. Smith regarding the possible interference between the bronchodilator and Propranolol.  (T. 187.)  On September 25, 2006, Z.J.M. saw Dr. Smith for examination to investigate whether Xopenex might be interfering with the effect of Propranolol.  Dr. Smith changed Z.J.M.'s prescription to another beta blocker, Atenolol.  Also, during that visit, Z.J.M.'s echocardiogram revealed that the subaortic stenosis gradient was up to 144 mmHg.  Dr. Smith noted that Z.J.M. "has remained free of any significant symptoms" but that "it may be reasonable to perform a cardiac catheterization to determine just how high [his] intracardiac pressures are" and that "[s]urgical intervention of subaortic stenosis can be performed."  Dr. Smith concluded that in Z.J.M.'s case "there may be a reason to proceed with some type of surgical procedure if the hemodynamic data were significant enough."  Again, Dr. Smith placed no restrictions on Z.J.M.'s activity.  (T. 167-169.)

On October 17, 2006, Dr. Smith noted that although Z.J.M.'s wheezing had improved, his subaortic stenosis "has remained significant and has actually progressed over the last month

or so."  Also, Z.J.M.'s father reported that Z.J.M. was coughing during the night.  Concerned that he "might be developing some mild degree of pulmonary edema related to increased ventricular filling pressures," Dr. Smith prescribed Z.J.M. a small dose of Lasix.  Dr. Smith also noted that he discussed Z.J.M.'s case at the cardiac case conference and "it was agreed that he might be a candidate for surgical therapy in the future to reduce his subaortic stenosis gradient, if he has significant signs of congestive heart failure related to this."  Still, no restrictions were placed on Z.J.M.'s activity level.  (T. 164-165.)

Although Dr. Smith's last treatment note indicated that an appointment was scheduled for Z.J.M. to see him on November 20, 2006, the next treatment note in the record is for August 23, 2007.  (T. 165, 219.)  On that date, Dr. Smith noted that he was following up with Z.J.M. "post resection of the hypertrophied septum and placement of a VSD patch to relieve the subaortic stenosis on April 26, 2007 at about one year of age with good result."  Dr. Smith also noted that Z.J.M.'s only medication is Atenolol.  Again, no restrictions were placed on Z.J.M.'s activity.  (T. 219-220.)

The next of Dr. Smith's treatment notes in the record is April 10, 2008.  At that point, there were no changes to Z.J.M.'s cardiac history, physical exam or ECG.  Dr. Smith recommended Z.J.M. remain on Atenolol, and placed no restrictions on his level of activity.  (T. 197-198.)  Six months later, Dr. Smith noted that Z.J.M.'s ventricular function was good and that there was no residual outflow tract obstruction.  Dr. Smith continued the dosage of Atenolol, because Z.J.M.'s heart rate was slow and because he appeared to have episodes of tiredness.  However, Dr. Smith noted that because Z.J.M. "is doing so well," he would only need to be seen every 12 months and "he requires no activity restrictions at the present time."  (T.195-196).

On August 18, 2009, Dr. Smith wrote a letter in response to a request to "comment upon [Z.J.M.'s] cardiac health and, in particular, his cardiac status during the first 18 months of life." Dr. Smith explained Z.J.M.'s condition and noted that because it was so severe and did not respond to medical therapy, Z.J.M. underwent surgery on April 26, 2007, and that it took about four months for him to recover. Dr. Smith went on to opine that

> [w]ere [Z.J.M.] to be an adult with this heart condition he would definitely have been unable to do any significant strenuous activity and would probably have had great difficulty finding employment through the entire time of his cardiac diagnosis and at least 3-4 months beyond the time of his operation. Fortunately, [Z.J.M.'s] condition has improved since then.

(T. 221.)

On December 18, 2006, R. Mohanty, a pediatric consultant, reviewed the record for Defendant and concluded that while Z.J.M.'s impairment is severe, it does not meet, medically equal or functionally equal the Listings. The consultant found that Z.J.M. has no limitation in the following domains: Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Moving About and Manipulating Objects. The consultant found that Z.J.M. has marked limitation in the domain of Health and Physical Well-Being, and failed to indicate which level of limitation existed for the domain of Caring For Yourself. Finally, the consultant noted that there is an extreme limitation in one of the domains. (T. 189-194.)

### B. Procedural History

On September 28, 2006, Plaintiff applied for SSI on Z.J.M.'s behalf. (T. 37, 65-71.) On January 5, 2007, her application was denied by the Social Security Administration. (T. 55-58.) Plaintiff, appearing pro se, requested a hearing, (T. 52-54), which was initially scheduled for

April 9, 2009, but was postponed until July 9, 2009 so that Plaintiff could obtain counsel, (T. 222-226).  Plaintiff did not obtain counsel until a few days prior to the scheduled hearing. Plaintiff's counsel sought an adjournment in order to further develop the record and prepare for the hearing.  (T. 133-136.)  However, the hearing was held as scheduled, on July 9, 2009, before an ALJ of the Social Security Administration.  (T. 227-258.)

On July 14, 2009, the ALJ issued a written decision denying Plaintiff's application for SSI benefits and finding that Z.J.M. is not disabled.  (T. 10-23.)  Plaintiff thereafter sought Appeals Council review.  (T. 8-9.)  With her letter of appeal, Plaintiff enclosed additional medical records.  (T. 219-221.)  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of Defendant.  Thereafter Plaintiff timely sought judicial review in this court on behalf of Z.J.M.

      **C.**      **Proceedings Before the ALJ**

In his decision, the ALJ applied the three-step evaluation process for determining whether a child can meet the statutory definition of disability.  "The first step of the test requires a determination of whether the child has engaged in substantial gainful activity."  *Rossi v. Commissioner of Social Sec.*, 10-CV-0097, 2010 WL 5313771, at *3 (N.D.N.Y. Dec. 2, 2010) (Baxter, M.J.) (citing 20 C.F.R. § 416.924[b]; *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 487-88 [E.D.N.Y. 2003]).  "If so, then by statute and by regulation, the child is ineligible for SSI benefits."  *Rossi*, 2010 WL 5313771, at *3 (citing 42 U.S.C. § 1382c[a][3][C][ii]; 20 C.F.R. § 416.924[b]).  "If the claimant has not engaged in substantial gainful activity, the second step of the test requires examination of whether the child suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as 'severe,'

in that they cause more than a minimal functional limitation." *Id*. "If the child if found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1." *Id*.

After applying the above-described three-step evaluation process, the ALJ concluded that Z.J.M. was not disabled. (T. at 22.) More specifically, in reaching this conclusion, the ALJ made the following findings: (1) Z.J.M. was a "preschooler" pursuant to 20 C.F.R. § 416.926a(g)(2) on September 28, 2006 (the date the application for benefits was filed), and July 14, 2009 (the date of the ALJ's decision); (2) Z.J.M. had not engaged in substantial gainful activity at any time; (3) Z.J.M. suffers from idiopathic hypertrophic subaortic stenosis, a severe impairment pursuant to 20 C.F.R. § 416.924 (c); (4) Z.J.M. did not have an impairment or combination of impairments which met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings"); (5) Z.J.M. did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings; and (6) Z.J.M. had no limitations in five of the six domains of function, and a less than marked limitation in the sixth domain (health and physical well-being). (*Id*. at 16-22.)

Plaintiff appealed from the ALJ's decision to the Social Security Administration's Appeals Council. (T. at 8-9.) On June 22, 1010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Defendant. (T. 4-7.) On June 28, 2010, Plaintiff commenced this action. (Dkt. No. 1.)

Generally, in her brief in support of her motion for judgment on the pleadings, Plaintiff asserts the following arguments: (1) the ALJ failed to meet his obligation to fully develop the

record (Dkt. No. 11 at 3); (2) the ALJ and Appeals Council failed to fully consider critical medical evidence (*id*. at 3-5); (3) there is no substantial evidence to support a conclusion that Z.J.M. was not disabled for the closed period between his birth on April 4, 2006 and August 27, 2007, i.e., four months following his surgery on April 26, 2007 (*id*. at 5-8); (4) there is reasonable doubt as to whether legal error has been committed (*id*. at 8); and (5) the unfavorable decision of Defendant should be reversed rather than remanded (*id*. at 8-9).

Generally, in his brief in opposition to Plaintiff's motion, and in support of his own motion for judgment on the pleadings, Defendant argues that the decision finding Plaintiff not disabled is supported by substantial evidence and should be affirmed.  (Dkt. No. 13.)

## II.   APPLICABLE LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* 42 U.S.C. § 1382c(a)(3)(C)(i).  However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42

U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y.  May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or

qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately,

effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## III.   ANALYSIS

In support of her challenge to Defendant's determination that Z.J.M. is not disabled, Plaintiff first argues that the ALJ failed to meet his obligation to fully develop the record. Defendant does not address this argument in his brief.

By statute, an ALJ is duty bound to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423[d][5][B] as incorporated by 42 U.S.C. § 1382c[a][3][G] and 20 C.F.R. § 416.912[d]).  An ALJ is under a heightened duty to develop the record in order to ensure a fair hearing where a claimant appears pro se. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 83 (2d Cir. 2009).

Here, Z.J.M. was unrepresented by counsel until shortly before the hearing. Although counsel sought an adjournment in order to further develop the record and prepare for the hearing, the hearing was held as scheduled. At the hearing, the ALJ informed counsel of what was in the record, noting that "[a]s far as I can tell, we have every report that Dr. Smith prepared, including those before and after surgery[,]" and counsel agreed with the ALJ. (T. 255.) Later, additional exhibits were added to the record after they were submitted by counsel as attachments to Plaintiff's request for Appeals Council review. One of those exhibits was, in fact, a treatment report from Z.J.M.'s visit to Dr. Smith on August 23, 2007 that was not in the record before the ALJ at the time of his decision that Z.J.M. was not disabled. Nothing in that treatment record,

however, adds to or detracts from Dr. Smith's later treatment records (T. 195-198), which were in the record at the time if the ALJ's decision. Therefore, any failure to develop the record was harmless.

Plaintiff next argues that the ALJ and Appeals Council failed to fully consider critical medical evidence. Specifically, Plaintiff identifies Dr. Smith's treatment notes from August 23, 2007, as well as his letter of August 18, 2009, which were submitted to the Appeals Council. (T. 219-221.) Plaintiff acknowledges that these exhibits were not available to the ALJ, but argues that, had the ALJ reviewed them, he would have been required to evaluate them and explain how they impacted his decision that Plaintiff's impairment did not functionally equal the Listings. Plaintiff notes that the Appeals Council made no comment about the substance of the exhibits nor of how they conflict with the ALJ's decision.

Defendant responds that the Appeals Council did consider the new evidence but found that it did not provide a basis for changing the ALJ's decision.

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Therefore, the rule requiring a showing of good cause for submitting new evidence not previously submitted during the administrative process is inapplicable here. *See Sobolewski v. Apfel*, 985 F. Supp. 300, 311 (E.D.N.Y. 1997). "When[, as here,] the Appeals Council denies review after considering new evidence, [the Court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." <u>Perez</u>, 77 F.3d at 46.

Here, Dr. Smith's letter of August 18, 2009, provided opinion evidence that should have been considered in evaluating whether Z.J.M.'s impairment was the functional equivalent of a Listing for the closed period of Z.J.M.'s birth through four months after his surgery. In this letter, Dr. Smith opines that

> [w]ere [Z.J.M.] to be an adult with this heart condition he would definitely have been unable to do any significant strenuous activity and would probably have had great difficulty finding employment through the entire time of his cardiac diagnosis and at least 3-4 months beyond the time of his operation. Fortunately, [Z.J.M.'s] condition has improved since then.

(T. 221.) Dr. Smith's treatment notes throughout the referenced time frame, i.e., birth through four months post-surgery, indicate no limitations on Z.J.M.'s level of activity. However, this apparent inconsistency should be weighed by the ALJ, because it is material to whether Z.J.M.'s impairment meets the functional equivalent of a Listing.

Plaintiff next argues that there is no substantial evidence to support the conclusion that Z.J.M. was not disabled for the closed period between his birth on April 4, 2006, and August 27, 2007, i.e., four months following his surgery on April 26, 2007, and that there is reasonable doubt as to whether legal error has been committed. Plaintiff challenges the ALJ's determination that Z.J.M. did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings and that Z.J.M. had no limitations in five of the six domains of function, and a less than marked limitation in the sixth domain (health and physical well-being).

In reaching those conclusions, the ALJ did not have the benefit of Dr. Smith's August 18, 2009 letter. The ALJ did, however, give some weight to the opinion of Defendant's pediatric consultant, taking into consideration that the consultant reviewed the file prior to Z.J.M.'s

surgery.  (T. 18.)  The ALJ further gave significant weight to the opinions of Dr. Smith, as expressed in his treatment notes, as well as the opinions of Z.J.M.'s pediatrician.  The ALJ concluded that Z.J.M. had no limitation in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; and (5) ability to care for oneself, and a less than marked limitations in (6) health and physical well-being.  (T. 19-22.)

Specifically, in support of his decision that Z.J.M. had no limitation in the domain of the ability to care for himself, the ALJ noted that the pediatric consultant found no limitation in that domain, when the record reflects that the consultant failed to identify a finding as to any limitation in that domain.  (T. 22, 192.)  The ALJ also relied on the records of Z.J.M.'s pediatrician in support of his conclusion that Z.J.M. had no limitation in this domain, noting that Z.J.M. achieved developmental milestones.  (T.22.)  Although Defendant's counsel identified other evidence in the record which would tend to support his conclusion that Z.J.M. had no limitations in this domain, "[s]ubsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation."  *Hamedallah ex rel. E.B. v. Astrue*, — F. Supp. 2d —, 2012 WL 2403518, at *8 (N.D.N.Y. 2012).

In support of his conclusion that Z.J.M. has less than marked limitation in the domain of health and physical well-being, the ALJ discounted the pediatric consultant's finding that Z.J.M. had a marked limitation in this domain, noting that the consultant reviewed the file only for the period prior to Z.J.M.'s surgery.  The ALJ instead relied on Dr. Smith's treatment notes from 12-18 months post surgery to conclude that Z.J.M. had a less than marked limitation in this domain.

It is also important to note that the ALJ did not address the additional inconsistency created within the pediatric consultant's report, which includes a finding that Z.J.M.'s impairment is severe, but does not functionally equal the Listings, despite a separate finding that Z.J.M. has an extreme limitation in at least one domain.  (T. 189, 193.)

Accordingly, because there are ambiguities and inconsistencies in the record regarding Z.J.M.'s functional abilities and limitations, which should have been addressed by the ALJ, this matter must be remanded.  Granted, Plaintiff argues that the unfavorable decision of the Defendant should be reversed rather than remanded.  However, reversal and remand for calculation of benefits is warranted only when there is persuasive proof of disability in the record and further development of the record would not serve any purpose.  *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir.1999).  Alternatively, where, as here, further findings and explanations would clarify the ALJ's decision, remand of the matter to the agency in order for discerned errors to be addressed is more appropriate.  *See id.*, at 82-83.  Here, the ALJ should address his conclusion regarding whether Z.M.J.'s impairment meets the functional equivalent of a Listing for the closed period between his birth on April 4, 2006, and August 27, 2007, i.e., four months following his surgery on April 26, 2007, giving attention to the impact of Dr. Smith's opinions in his letter of August 18, 2009, as well as the ambiguities in the pediatric consultant's report.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

Dated: August 3, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge